IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN ROGER GEORGES,                              No. 6:17-cv-00475-HZ

                    Plaintiff,                    OPINION & ORDER

        v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137

        Attorney for Plaintiff

Billy Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Michael Howard
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Kevin Roger Georges brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). Because the Administrative Law Judge's ("ALJ") decision contained legal errors and was not supported by substantial evidence, the Court REVERSES and REMANDS this case for an immediate award of benefits.

## BACKGROUND

Plaintiff was born on January 28, 1963, and was fifty years old on December 17, 2013, the amended alleged disability onset date. Tr. 41, 247.[1] Plaintiff has an eleventh grade education and past relevant work experience as a cable line assembler. Tr. 30–31. Plaintiff's SSI application was initially denied on February 19, 2014, and upon reconsideration on May 29, 2014. Tr. 163–172. A hearing was held before ALJ Katherine Weatherly on December 10, 2015. Tr. 37. ALJ Weatherly issued a written decision on January 20, 2016, finding Plaintiff not

---

[1] Citations to "Tr." refer to the administrative transcript record filed here as Docket No. 9.

disabled. Tr. 20–32. The Appeals Council declined review, rendering ALJ Weatherly's decision the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–6.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 22.

At step two, the ALJ determined that Plaintiff has the following severe impairments: "bipolar I disorder and attention deficit/hyperactivity disorder" ("ADHD"). Tr. 22.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 23.

Before proceeding to step four, the ALJ determined that Plaintiff has the RFC to perform "a full range of work at all exertional levels with the following nonexertional limitations: he is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks. He can have occasional contact with coworkers or the public, but not in close proximity." Tr. 25.

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. Tr. 30–31.

At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: laundry worker; linen room attendant; and cleaner. Tr. 31. Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 32.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises multiple challenges to the ALJ's decision. First, he argues that the ALJ improperly rejected his symptom testimony. Second, Plaintiff contends the ALJ erred by improperly disregarding the medical opinions of Dr. Marianne Straumfjord, Dr. William Trueblood, and Marta Richards. As a result of these alleged errors, Plaintiff argues that the hypotheticals that the ALJ posed to the VE at the administrative hearing were incomplete because they did not include limitations from the improperly rejected testimony. Accordingly, Plaintiff maintains that the ALJ erred at step five by determining that Plaintiff was disabled based on an RFC that did not account for all of his limitations.

//

//

# I.     Plaintiff's Testimony

The ALJ rejected Plaintiff's testimony primarily based on two findings. First, that Plaintiff's symptoms improved and stabilized when he attended medical appointments and took his medication. Second, the ALJ highlighted Plaintiff's failure to adhere to prescribed treatment to support her decision to disregard his testimony. The Court finds that the ALJ erred in relying on both bases to reject Plaintiff's testimony.

## A.     *Applicable Law*

The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591.Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (quotation and citation omitted) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted) (the ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms"). An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation.

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

As the Ninth Circuit explained in *Molina*;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.] While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (citations and internal quotation marks omitted).

//

//

## B.    Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that he suffered from extreme mood swings. Tr. 46. He said, "[o]ne minute I would, you know, feel like Superman. I was going to get a job, you know, and that. And the next minute, I would go down to my lowest where I couldn't get out of bed." *Id.* He also stated that he was very forgetful from week to week depending on his medication. Tr. 47. Plaintiff relies on his wife to manage his medication as well as to remind him to take his medication and to attend medical appointments. Tr. 48, 50. Plaintiff also needs to be reminded to eat, bathe, change his clothes, and complete other basic tasks. Tr. 50. Additionally, Plaintiff stated that his bipolar condition causes him to either sleep or stay awake for multiple days in a row. Tr. 51. Moreover, Plaintiff testified that he was paranoid, heard voices in his head, had trouble learning new things, and suffered from deficits in his short-term memory and concentration. Tr. 52. Plaintiff's forgetfulness and inattention progressed such that his family members no longer trust him to remain at home alone with his grandchildren and dogs out of fear that he would forget to attend to their needs and leave doors and gates open. Tr. 53–55. As the result of these conditions, Plaintiff stated that "the littles thing" will make him "angry and frustrated." Tr. 53.

Plaintiff also submitted a function report on January 31, 2014, in which he wrote about the severity of his symptoms. Tr. 259–66. When prompted to list conditions that limit his ability to work, Plaintiff wrote: confusion; physical pain from depression; manic, restless; missing work due to depression and not able to get up; sleepless nights; and ADHD. Tr. 259. Depending on Plaintiff's mood, he would sometimes forego meals and stay in bed all day. Tr. 261. Other days, he would attempt to do dishes, laundry, and mow the lawn. Tr. 262. Plaintiff stated that those tasks would usually take him either all day or a couple of days to complete because he "can't

focus to finish a task." Tr. 262. Furthermore, Plaintiff wrote that he gets manic with "just about any stress," cannot manage accounts or bills, keeps meal preparation as simple as possible, and leaves the house as little as possible. Tr. 262–64. Likewise, he wrote that he cannot "retain instructions" and his mania makes it "hard to reason with people." Tr. 264.

## C.       *The ALJ's Treatment of Plaintiff's Testimony*

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" Tr. 27. The ALJ rejected Plaintiff's subjective symptom testimony primarily because Plaintiff's symptoms improved with treatment and medication. Particularly, the ALJ noted that when Plaintiff attended treatment appointments and took his medication, his mood, anxiety, and mental functioning improved and stabilized. Tr. 27–28. Further, ALJ discussed Plaintiff's "intermittently poor attendance" regarding appointments and Plaintiff's repeated failure to consistently take his medication. Tr. 27. The ALJ added that when Plaintiff restarted "the prescriptions and adjustments over the next few months into late 2014, he appeared to stabilize and he presented as cleaner and less irritable." Tr. 27. The ALJ noted that on several occasions, Plaintiff reported that medication was helpful for managing his conditions and that medical providers observed significant improvements in Plaintiff's appearance and condition when he adhered to prescribed treatment. Tr. 27–28. Based on these findings, the ALJ wrote: "It is reasonable to expect that with ongoing treatment, the overall stability demonstrated in these records when complaint [sic] will continue." Tr. 28.

//

//

**D.** **Effectiveness of Treatment**

The Court finds that the ALJ erred by using evidence of intermittent improvement in Plaintiff's condition and his failure to adhere to prescribed treatment to discredit his subjective symptom testimony. In the mental health context, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1194, 1205 (9th Cir. 2001)). As the Ninth Circuit explained in *Garrison*:

> Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. . . . [and] with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace. . . . Caution in making such an inference is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work.

*Id.* (internal quotations and citations omitted). In addition, an ALJ errs by discrediting a claimant based on "bouts of remission" appearing to result from the claimant going off of medication. *Id.* at 1023 n.23.

In this case, the record shows that Plaintiff's symptoms remained a constant source of impairment. For example, Plaintiff's anxiety, depression, poor concentration, and manic episodes largely persisted from February 2014 through December 2015. Tr. 320, 336, 338, 340, 342–346, 350, 355, 357, 368, 384–87, 391–93, 395–96. Some of Plaintiff's other symptoms were more intermittent, such as his auditory and visual hallucinations, paranoia, and irritability. Tr. 331, 334, 338, 340, 344, 346, 368, 375, 393. The ALJ, however, was correct to note that Plaintiff

enjoyed brief periods of mood stability and improved symptoms when he consistently attended individual and group therapy appointments and took the prescribed doses of his medication. Nonetheless, those instances of temporary improvement were insufficient to show a "broader development to satisfy the applicable 'clear and convincing' standard." *Garrison*, 759 F.3d at 1019. In *Garrison*, the Ninth Circuit found that the ALJ improperly rejected the plaintiff's testimony under substantially similar circumstances. The court explained:

> Rather than describe Garrison's symptoms, course of treatment, and bouts of remission, and thereby chart a course of improvement, the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit Garrison. While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable "clear and convincing" standard. Here, the record reveals a tortuous path: some symptoms came and went (e.g., paranoia, hallucinations, pseudo-seizures), some symptoms persisted nearly the whole period (e.g., insomnia, bouts of depression and mania), and still other symptoms appear to have remained a constant source of impairment (e.g., intense anxiety). Garrison's diagnoses of PTSD and bipolar disorder remained constant across all treatment records, and her GAF score consistently hovered around 50 to 55. She remained in this condition even while going to great lengths to minimize stressors in her life—to the point that she could not go to the grocery store alone—and, when she did try to work for a brief period, was fired because of her mental impairments. The ALJ erred in concluding that a few short-lived periods of temporary improvement in Garrison's mental health symptoms undermined Garrison's testimony.

*Id.* at 1018. In further comparison, Plaintiff also suffered from anxiety triggered by stimuli resembling trauma that nearly met the criteria for PTSD and his GAF score occasionally ranged from 35 to 45 and was often assessed at 55. Tr. 28, 334.

Plaintiff's statements "must be read in context of the overall diagnostic picture he draws." *Holohan*, 246 F.3d at 1205. As the Ninth Circuit explained in *Holohan*, "[t]hat a person who

suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairment no longer seriously affect her ability to function in a workplace." *Id.* Plaintiff's short-lived bouts of remission do not indicate a broader amelioration of his impairments. Rather, the medical record demonstrates that Plaintiff was continually impaired by his underlying mental conditions and that his overall condition was not only on the downswing toward the end of the relevant period, it was considerably deteriorating. "When a claimant's condition is progressively deteriorating, the most recent medical report is the most probative." *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1968); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("A treating physician's most recent medical reports are highly probative.").

From March through December 2015, Plaintiff's Bipolar I condition worsened. He frequently forgot to take his medication and attend treatment appointments. Tr. 376–77, 382–97, 399–402. Plaintiff testified that he was too depressed to leave his bed some days and needed constant reminders to bathe, take his medication, and complete other basic tasks. Tr. 385, 391, 393, 395–96. In Dr. Straumfjord's December 10, 2015 letter, she wrote that it was "extremely difficult" for Plaintiff and his caregivers to manage his medicine and she did "not see much change in [Plaintiff's] condition in the foreseeable future." Tr. 404. Likewise, Plaintiff's wife submitted a declaration on November 30, 2015, in which she wrote that Plaintiff "has worsened considerably since his pervious hearing with a judge. This is especially true regarding his mental health problems." Tr. 303. The remainder of the medical record is in accordance with this testimony and supports a downward trajectory of Plaintiff's condition. In other words, it was an error for the ALJ to cherry pick instances of improvement with treatment to conclude that Plaintiff was capable of working. *See Garrison*, 759 F.3d at 1017; *Elliot v. Berryhill*, No. 3:16-

CV-02351-AA, 2018 WL 1092486, at *3 (D. Or. Feb. 28, 2018) (citing *Ghanim v. Colvin*, 763

F.3d 1154, 1164 (9th Cir. 2014) ("ALJ may not cherry-pick isolated instances of improved

psychological symptoms when the record as a whole reflects longstanding psychological

disability.")).

E.     ***Failure to Follow Prescribed Treatment***

The ALJ also erred by discounting Plaintiff's testimony based on his inability to follow

prescribed treatment. Plaintiff's inability to consistently adhere to prescribed treatment and

periods of improvement are directly attributable to his Bipolar I and ADHD disorders. The Ninth

Circuit has cautioned against punishing plaintiffs under such circumstances:

> As we have remarked, it is a questionable practice to chastise one
> with a mental impairment for the exercise of poor judgment in
> seeking rehabilitation. In other words, we do not punish the
> mentally ill for occasionally going off their medication when the
> record affords compelling reason to view such departures from
> prescribed treatment as part of claimants' underlying mental
> afflictions.

*Garrison*, 759 F.3d at 1018 n.24 (internal quotation marks and citation omitted). "An

unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of

treatment" can be a basis to discount symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th

Cir. 1989). However, no adverse credibility finding is warranted where a claimant has a good

reason for failing to obtain treatment. See *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Here, Plaintiff's failure to follow prescribed treatment is directly attributable, in large

part, to his mental impairments. *See Garrison*, 759 F.3d at 1018 n.24 ("Here, the record shows

that Garrison's occasional decisions to go 'off her meds' were at least in part a result of her

underlying bipolar disorder and her other psychiatric issues."). Plaintiff's testimony, medical

opinion evidence, and Mrs. Georges's third-party statement from all demonstrate that Plaintiff's

memory and concentration are impaired such that he cannot remember to attend treatment appointments, take his medication, or to complete basic tasks in his daily life. Plaintiff relies on his wife for transportation, does not have a driver's license, and is unable to take public transportation. Accordingly, the Court finds that Plaintiff provided compelling reasons explaining his inability to follow prescribed treatment. *Id.* Therefore, the ALJ erred by using Plaintiff's failure to follow prescribed treatment as a reason to discount his testimony.[2]

## II.    Medical Opinion Evidence

Plaintiff challenges the ALJ's decision to accord less than full weight to the opinions of three medical providers: Dr. Straumfjord; Dr. Trueblood; and Marta Richards. Social security law recognizes three types of physicians: (1) treating; (2) examining; and (3) nonexamining. *Garrison*, 759 F.3d at 1012. Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). And, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim*, 763 F.3d at 1160; *Orn*, 495 F.3d at 631. If the treating physician's opinion is not contradicted by another doctor, the ALJ

---

[2] The ALJ also found that there "are reasons other than the alleged worsening of impairments that have caused the claimant to remain unemployed." Tr. 27, 370. This finding was based on Plaintiff's decision to close his business and inability to find subsequent employment were due, in part, to the economy. The record shows that Plaintiff also testified that he shuttered his business in 2006 because he was "not able to make proper decisions" and "ran the company into the ground." Tr. 332. Plaintiff reported to Dr. Trueblood that he "could not focus and was very indecisive" regarding his business. *Id.* At the administrative hearing, when asked why his employment ended, Plaintiff replied: "The industry started to, I guess, go downhill. And I pretty much to [sic] my illness, too." Tr. 44. The Court finds that the ALJ rationally interpreted the record to conclude that Plaintiff may have had reasons other than his impairments for being unemployed. However, the Court finds that this basis, alone, does not satisfy the clear and convincing standard. The fact that Plaintiff's decision to close his business partially motivated by economic factors is not a clear and convincing reason for rejecting his testimony that his impairments prevented him from working.

may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject that opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). And, when a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

## A.    Dr. Straumfjord

Dr. Straumfjord began treating Plaintiff at the Deschutes County Behavioral Health in 2012. Tr. 404.[3] On December 10, 2015, Dr. Straumfjord issued a written opinion about the effects of Plaintiff's impairments on his ability to work. She wrote, in part:

> This patient has severe Bipolar-I Disorder as well as sever[e] ADHD, Combined Type. In my experience, he has never been well enough psychiatrically to maintain in a work environment. It is difficult for him to identify changes in mood, particularly manic episodes. As a consequence, managing his medication is extremely difficult, both by himself and by his caregivers. I do not see much change in [Plaintiff's] condition in the foreseeable future. Once again, I believe he is totally disabled from any sort of productive work.

Tr. 404.

In addition, Dr. Straumfjord submitted a medical source statement that she co-signed with Ms. Richards. Tr. 399–402. The statement listed several categories of mental functioning and provided boxes for indicating the degree of limitation ranging from Category I to Category IV.

---

[3] The administrative record only includes records from Deschutes County Behavioral Health dating back to February of 2014. Tr. 317. Dr. Straumfjord, however, states in her opinion that she began treating Plaintiff in 2012. Tr. 404.

Category IV, the highest degree of limitation, precludes performance or productivity for "30% of an 8-hour work day." Tr. 399. In the medical source statement, Dr. Straumfjord indicated that Plaintiff had Category IV limitations across several areas of mental functioning including: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. Tr. 399–402. Additionally, Dr. Straumfjord wrote that Plaintiff's impairments would cause him to be absent from work five days or more in a month. Tr. 402. When prompted to explain the reasons for such absenteeism, she wrote: "depression, frustration, irritability, hopelessness, low self-esteem, stress, manic episode, emotionally dysregulated." *Id.* Lastly, Dr. Straumfjord wrote that Plaintiff would be "off task" more than 30% of an 8-hour work day because of his: "lack of concentration and focus; forgetfulness; inability to tolerate noise; highly distractible; inability to manage stress; episodes of mania or depression." *Id.*

The ALJ disregarded Dr. Straumfjord's opinion, writing:

> Here, the treatment record shows this physician has been treating the claimant since March 2014. Dr. Straumfjord did see the claimant more regularly than Ms. Richards did, which developed a better record, but again, the evidence shows good results with appropriate treatment. Furthermore, Dr. Straumfjord's statements are conclusory, there is no indication that she has specialized knowledge of the disability program and review process, and the final responsibility for deciding the issue of disability is reserved to the Commissioner.

Tr. 30. It is unclear from the ALJ's decision how much weight she assigned to Dr. Straumfjord's opinion. First, the ALJ sets forth the test for determining whether a treating provider's opinion is entitled to controlling weight. Then, the ALJ determined that Dr. Straumfjord's opinion should be disregarded because Plaintiff's symptoms improved with treatment and because Dr. Straumfjord does not specialize in disability programs. The Court finds Dr. Straumfjord's

opinion was entitled to controlling weight and the ALJ did not provide clear and convincing reasons for rejecting it.

An ALJ will give "controlling weight" to a treating source's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The weight accorded a treating physician's opinion depends on the length of the treatment relationship, the frequency of visits, and the nature and extent of treatment received. 20 C.F.R. §§ 404.1527(c)(2)(i)–(ii), 416.927(c)(2)(i)–(ii).

An ALJ may reject the opinion of a treating provider where the opinion is: based largely on the claimants subjective complaints which have been discredited; inconsistent with medical records; or is internally inconsistent with the provider's own treatment notes. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999); *Valentine*, 574 F.3d at 692–93. Also, when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216. A physician's opinion "with respect to the existence of an impairment or the ultimate determination of disability" is not binding on the ALJ. *McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2010); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (statements by a medical source that a claimant is disabled or unable to work does not mean the Commissioner will determine the claimant is disabled); *but see Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (distinguishing opinion by physician that the "combination of mental and medical problems makes the likelihood of sustained full-time employment unlikely" because this was an assessment based on

objective medical evidence of the likelihood of being able to work and was not a conclusory statement of disability).

Given the length and nature of Dr. Straumfjord's treating relationship with Plaintiff and her opinion's support from the record, the Court concludes that Dr. Straumfjord's opinion was entitled to controlling weight. It is supported by extensive medical records from Deschutes County Behavioral Health, including: Dr. Straumfjord's treatment notes; Ms. Richards's behavioral health assessment; and the medical source statement. Dr. Straumfjord's opinion is also consistent with Dr. Trueblood's opinion, Ms. Richards's opinion, Plaintiff's testimony, and Mrs. Joni Georges's third-party function report.[4]

The ALJ's reasons for discounting Dr. Straumfjord's opinion do not meet the clear and convincing standard. Preliminarily, the Court clarifies that the proper standard applicable to Dr. Straumfjord's opinion is the clear and convincing standard as opposed to the specific and legitimate standard. As discussed above, Dr. Straumfjord's opinion is consistent with, rather than contradictory to, the opinions of other medical providers. Further, immediately following the ALJ's discussion of Dr. Straumfjord's opinion, the ALJ gives the opinions of state agency non-examining psychological consultants significant weight. Tr. 30, 124–39, 141–57. While the ALJ did not expressly state that state agency consultants' opinions contradicted Dr. Straumfjord's opinion, that finding was implied by the ALJ's decision to give the state agency opinions greater

---

[4] Plaintiff does not challenge the ALJ's rejection of Mrs. Georges's testimony. The Court however, relies in part on her testimony. The ALJ rejected it on the grounds that it was inconsistent with Plaintiff's bouts of remission and because Mrs. Georges is "understandably sympathetic to [her] family member and therefore . . . apt to overstate functional limitations on their behalf." Tr. 26–27. As discussed above, it was error for the ALJ to rely on Plaintiff's bouts of remission to disregard testimony in this case. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (holding that ALJs may not discredit lay testimony that is not supported by medical evidence in the record). Additionally, it is well-established in the Ninth Circuit that an ALJ cannot disregard lay witness testimony because of the witness's familial relationship to the claimant. *Id.* at 1116 (holding that the lay-witness testimony of the claimant's wife could not be discredited because of her close relationship with the claimant); *see also Valentine*, 574 F.3d at 694 (holding that ALJs err by rejecting spouses' testimony by relying on characteristics common to all spouses and without either identifying why the spouse was ignorant of the claimant's functional capacities or by pointing to specific exaggerated claims).

weight. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996). Additionally, the ALJ did not explain why the non-examining state agency consultants' opinions, rather than Dr. Straumfjord's, were correct.

The Commissioner argues that the ALJ found that Dr. Straumfjord's opinion was also contradicted by medical evidence in the record. Upon reviewing the ALJ's decision, however, the Court finds that the ALJ did not rely on any inconsistency within the medical record as a basis for discounting Dr. Straumfjord's opinion. A district court cannot affirm a non-disability decision based upon grounds that the ALJ did not invoke. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). At best, the ALJ found that Plaintiff's periods of improvement with treatment demonstrated that he was more capable than Dr. Straumfjord opined. As discussed above, however, Plaintiff's bouts of remission when he adhered to prescribed treatment are not inconsistent with the finding that Plaintiff's impairments prevented him from working. More importantly, Dr. Straumfjord was Plaintiff's treating provider during his periods of improvement and her treatment notes encompass the waxing and waning of his symptoms. Dr. Straumfjord was uniquely positioned to assess the severity of Plaintiff's impairments and she concluded that—notwithstanding Plaintiff's periods of improvement—his severe Bipolar I and ADHD conditions would preclude him from working. Tr. 399–404. The ALJ simply disagreed with Dr. Straumfjord's conclusion based on her own treatment notes without citing any medical evidence to the contrary.

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Lastly, the ALJ rejected Dr. Straumfjord's opinion on the grounds that it was conclusory and she lacked specialization in disability programs. Based on the foregoing, the great weight of the record supports Dr. Straumfjord's opinion and it cannot, therefore, be conclusory. The Court also agrees with Plaintiff that a lack of specialization in disability programs cannot be a clear and convincing reason to reject the uncontradicted opinion of a treating medical provider. While specialization in a medical field may be relevant for the purpose of assigning a medical opinion weight, a lack of specialization in disability programs is not a clear and convincing reason for rejecting medical opinions. *See Garrison*, 759 F.3d at 1013 n.14 (stating that opinions from specialists related to that person's specialty are afforded more weight); *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(5)) (giving greater weight to an opinion because "it is 'an opinion of a specialist about medical issues relating to his or her area of specialty.'"). In other words, the fact that the medical provider opines about the ultimate question of disability, a question reserved for the ALJ, is not in itself, a clear and convincing reason to reject the medical opinion. 20 C.F.R. § 404.1527(d).

In conclusion, the Court finds that the Dr. Straumfjord's opinion was entitled to controlling weight and the ALJ erred by failing to provide clear and convincing reasons to reject her opinion.

## B.   Dr. Trueblood

Next, Plaintiff argues that the ALJ improperly rejected the opinion of examining physician Dr. Trueblood. The ALJ gave Dr. Trueblood's opinion limited weight because "his

assessments of work related functioning" were "vague and equivocal" and because "he failed to give proper consideration to the claimant's own report that his focus improved and manic symptoms reduced when taking medications." Tr. 29.

Dr. Trueblood conducted a psychodiagnostic examination of Plaintiff on December 10, 2014. Tr. 329. He diagnosed Plaintiff with: Bipolar I Disorder with psychotic features; ADHD; and Alcohol Use Disorder in full sustained remission. Tr. 335. In particular, Dr. Trueblood found that Bipolar I rather than Bipolar II should be diagnosed because of Plaintiff's psychotic symptoms such as auditory hallucinations and paranoia. Tr. 332–33. He found that "the course of these symptoms seems to be one of worsening in recent years, including worsening in his focus; this seems best demonstrated in decline in his performance in operating his own business in the early 2000's." Tr. 334.

As to Plaintiff's attention problems, Dr. Trueblood's cognitive screening results indicated "impaired performance on a memory screening task and suggestive evidence for impairment in working memory (impaired calculations, mildly low digit repetition, normal mental tracking)." Tr. 334. Dr. Trueblood explained the tentative nature of his findings from his diagnostic examination:

> Note that only tentative impressions can be offered about this gentleman's cognitive functioning since only a cognitive screening was conducted. Tentative impression include that it does seem likely that there is acquired cognitive impairment that is significant in degree, including in memory as well as attention (working memory as well as maintaining attention). Plausible contributing factors to acquired cognitive impairment for this gentleman include his past alcohol abuse and his Bipolar II Disorder. If further information is needed about [Plaintiff's] cognitive functioning, a neuropsychological screening examination could be performed.

Tr. 334. Regarding Plaintiff's ability to understand instructions, Dr. Trueblood found that there was only a single instance during the evaluation where he had difficulty understanding

something said to him. Tr. 334. Dr. Trueblood's "[t]entative expectation is that [Plaintiff's] ability to understand instructions is mildly impaired at most." Tr. 334. Additionally, he found Plaintiff's ability to understand instructions was "at least mild[ly] to moderate[ly]" impaired. Tr. 334. Dr. Trueblood expected that Plaintiff's ability to "sustain attention/concentration and persist" was subject to a "significant and quite possibly substantial degree of impairment." Tr. 334.

An ALJ is "not required to incorporate limitations phrased equivocally into the RFC." *Collum v. Colvin*, No. 6:13-cv-01173-AA, 2014 WL 3778312, at *4 (D. Or. July 30, 2014) (citing *Valentine*, 574 F.3d at 691–92). For example, an ALJ may reject functional limitations prefaced with language such as "might," "may," or "would also likely require." *Id.* (citing *Glosenger v. Comm'r Soc. Sec. Admin*, No. 3:12-cv-1773-ST, 2014 WL 1513995, at *6 (D. Or. Apr. 16, 2014)). Statements including such language may be excluded by an ALJ because they are not diagnoses or descriptions of a plaintiff's functional capacity. *See Valentine*, 574 F.3d at 691–92 (upholding the ALJ's rejection of an equivocal medical observation because it was "neither a diagnosis nor a statement of [the plaintiff's] functional capacity" and finding that it was "rather a recommended way for [the plaintiff] to cope with his PTSD symptoms").

Here, Dr. Trueblood opined about Plaintiff's functional capacities; however, he explained that his findings were "tentative" because they were based on a psychodiagnostic examination as opposed to neuropsychological screening examination. Dr. Trueblood uses his own terms of degree for describing the severity of Plaintiff's impairments, ranging from: mild, moderate, significant, to substantial. The Court agrees with the Commissioner that those terms are vague and undefined. Therefore, it was rational for the ALJ to accord Dr. Trueblood's functional assessments limited weight for the purpose of formulating Plaintiff's RFC. Dr. Trueblood's

functional assessments were ambiguous and "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041–42 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)).

On the other hand, while the ALJ's interpretation of Dr. Trueblood's opinion was rational, the ALJ nevertheless erred by failing to fulfill her duty to develop the record. It is well established that an ALJ has a "special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted). Disability hearings are not adversarial in nature. *Windmark v. Barnhart*, 454 F.3d 1063, 1068–69 (9th Cir. 2006); SSR 16-03p, at *11. In this case, Dr. Trueblood opined about the severity of Plaintiff's functional limitations; albeit, the degree of those limitations was not entirely clear. The ALJ had a duty to further inquire to see if Dr. Trueblood's functional assessments should be more fully integrated into Plaintiff's RFC. It may have been appropriate for the ALJ to subpoena Dr. Trueblood or submit further questioning to him. *Smolen v. Chater*¸ 80 F.3d 1273, 1288 (9th Cir. 1996) (citing 42 U.S.C. § 405(d) (1998); 20 C.F.R. § 404.950(d) (1991); 20 C.F.R. § 404.1527(c)(3)).

Moreover, for the same reasons discussed above, it was inappropriate for the ALJ to use Plaintiff's bouts of remission as a reason to discount Dr. Trueblood's opinion. Therefore, the Court finds that the ALJ's treatment of Dr. Trueblood's opinion contains harmful legal errors.

### C.    *Ms. Richards*

Lastly, Plaintiff challenges the ALJ's decision to accord less than full weight to Ms. Richards's opinion. Ms. Richards, Plaintiff's therapist who worked at Deschutes County Behavioral Health, submitted the functional assessment report along with Dr. Straumfjord

discussed above. Tr. 399–401. Once more, Ms. Richards opined that Plaintiff would be precluded from performing multiple functions thirty percent of an eight-hour workday and he would miss more than five days of work per month. *Id.*

First, the parties dispute whether Ms. Richards is an acceptable medical source. "Medical sources" refers to both "acceptable medical sources" and other health care providers who are "not acceptable medical sources." SSR 06-03p; 20 C.F.R. §§ 404.1502, 416.902. Ms. Richards, MA, CADC II, LPC, is a certified alcohol and drug counselor as well as a licensed professional counselor. Tr. 399–402. These credentials do not render Ms. Richards an acceptable medical source within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1502(a). Rather, Ms. Richards is a non-acceptable medical source. 20 C.F.R. § 404.1502(d). While opinions from acceptable and non-acceptable medical sources are weighed in similar manners, 20 C.F.R. § 404.1527(f), an ALJ may reject an opinion of a non-acceptable medical source by providing reasons germane to that source. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017).

Here, the ALJ discounted Ms. Richards's opinion because she had seen Plaintiff nine times in eighteen months and because she opined about Plaintiff's restrictions beginning in January 2012, two years before their treating relationship began. Tr. 29. The Court finds that these were not germane reasons. First, the fact that Ms. Richards saw Plaintiff nine times in eighteen months supports according her opinion greater weight. Indeed, other than Dr. Straumfjord, Ms. Richards had the most contact with Plaintiff and her treatment notes were the most detailed. Ms. Richards certainly had much more contact than the examining and non-examining reviewing physicians in this case. Second, Ms. Richards's opinion about Plaintiff's condition dating back to January 2012 was based on her review of Plaintiff's prior medical records. Tr. 401. Plaintiff's treatment at Deschutes County Behavioral Health dated back to early

2012 and Ms. Richards worked as a part of a team including Dr. Straumfjord to treat Plaintiff's conditions. Tr. 404. In any event, while it may have been rational for the ALJ to discount Ms. Richards's opinion to the extent that it pertained to the time before her treating relationship began, that reasoning cannot extend to the period of time in which Ms. Richards treated Plaintiff. In sum, the Court finds that the ALJ improperly rejected Ms. Richards's opinion.

## III.    Remand

Because the Court concludes that the ALJ's decision contained harmful legal errors and was not supported by substantial evidence in the record, the remaining question is whether this case should be remanded for further administrative proceedings or an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). Under the "ordinary" remand rule in Social Security cases, district courts remand to the agency for additional investigation or explanation. *Treichler*, 775 F.3d at 1162. "Usually, '[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.'" *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). Additionally, district courts in the Ninth Circuit may also apply the "credit-as-true" rule to remand for an immediate award of benefits. *Id.* at 1020. Each of the following must be satisfied to justify an immediate award of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* (citations omitted). Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly where the record as a whole creates serious doubts that the claimant is disabled. *Burrell*, 775 F.3d at 1141.

As to the first factor, Court finds that the record has been fully developed and further administrative proceedings would serve no useful purpose. Medical opinion evidence, Plaintiff's testimony, and Mrs. George's testimony are in accordance that, notwithstanding Plaintiff's bouts of remission, his mental impairments—especially his Bipolar I disorder—preclude him from employment. Regarding the second factor, as discussed above, the Court finds that the ALJ provided legally insufficient reasons for rejecting medical testimony entitled to controlling weight as well as other medical and lay testimony. Finally, when the improperly rejected testimony is credited-as-true, it would require that the ALJ find Plaintiff disabled. Dr. Straumfjord and Ms. Richards opined that Plaintiff would be unable to function thirty percent of an eight hour day and that he would miss more than five days of work in a month due to his mental impairments. Similarly, Plaintiff's testimony and Ms. George's third-party function report both state that Plaintiff's mental impairments would prevent him from working.

"Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" *Id.* (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d. 1396, 1398 (9th Cir. 1998)). "Indeed, in cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would needlessly delay effectuating the primary purpose of the Social Security Act, 'to give financial assistance to disabled persons because they are without the ability to sustain themselves.'" *Holohan*, 246 F.3d at 1210 (quoting *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995)). Therefore, in light of the record in this case and the relevant law, the Court finds that a remand for an immediate award of benefits is appropriate.

//

CONCLUSION

The Commissioner's decision is reversed and remanded for an immediate award of benefits.

IT IS SO ORDERED.

Dated this ___ day of _____, 2018.

_____
MARCO A. HERNANDEZ
United States District Judge